MARK WINDSOR, Cal. Bar No. 190589
65 North Raymond Avenue, Suite 320
Pasadena, CA 91103
Tel: (626) 792-6700
Fax: (626) 956-8900
Email: mark@windsorlaw.us

Attorney for Defendant LUIS VEGA

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: CR 18-173-GW-2 |
| Plaintiff, | OBJECTIONS TO PSR AND SENTENCING MEMORANDUM |
| vs. | |
| LUIS VEGA, | Date: JULY 6, 2020 |
| Defendant. | Time: 10:30 a.m. |

Defendant LUIS VEGA, through counsel, here files his Objections to the PSR and Sentencing Memorandum

DATED: June 29, 2020          Respectfully Submitted

                              /s/
                              MARK WINDSOR
                              Attorney for Luis Vega

- 1 -

# I. OBJECTIONS TO THE PRESENTENCE REPORT

Mr. Vega respectfully objects to the enhancements proposed by the Probation Officer for aggravated role (+3) as indicated on Page 3 and at paragraph 42 on page 13 of the Presentence Report (PSR). The plea agreement in this case was the product of months of negotiations between the parties and the factual basis and sentencing recommendations have been carefully crafted to reflect the appropriate facts and sentence according to the parties. It is notable, however, that the Probation Officer's sentencing recommendation of 135 months in total is also the agreement and recommendation of the parties.

Of greater concern is paragraph 38 (e) of the PSR on page 10. This paragraph states:

> In November 2012, J.R. was arrested and housed at LACJ where **Vega** was also incarcerated pending trial for the event on November 16, 2011. J.R., aware he was on the "green light" list, used the moniker of a different MS-13 gang member to avoid being assaulted and/or killed in LACJ. While J.R. was in LACJ, **Vega** sent a kite to J.R. thinking that he was someone else. The kite stated, "Hey dog how are you I am L1 (Lil One) Listen up dog with you is the rat from PVLS. His name is J.R. I don't think he will give you his moniker but he is the cousin of minuta if you can hit him and it will be blessed by me break that fool" The kite is signed "the L1 (Lil One) MSXIII (MS-13)."

PSR, at page 9, paragraph 19(e). While this allegation is included in the indictment in this case, it is an obvious fabrication. First, there are the highly dubious details that the kite is labeled "To Sinner" on the outside fold (JR alleges he was posing as Sinner), and is purportedly signed by Mr. Vega, which is both not something Mr. Vega would do and is highly unusual in general with authentic messages of this kind. But this is not the biggest problem with this evidence.

The government will not contest that J.R. was arrested by a local police department for domestic violence on November 9, 2012. By November 14, 2012, before he was transported to LA Men's Central Jail, J.R.'s handlers had advised the local jail of his status and were assured

he would be placed in protective custody and soon would be transferred to LA Men's Central Jail. J.R. alleges he received this kite at LA Men's Central on November 30, 2012, when he presumably would have been in some sort of protective custody. He was not released from jail until on or soon after December 12, 2012, and instead of going straight to immigration custody and facing deportation, he was picked up directly by his handler, who placed him in a hotel and gave him spending money, since J.R. had been kicked out of his residence by his victim and all of his things were gone. Nonetheless, despite immediately having contact with his handler upon release, having already been cooperating with law enforcement for over a year (since at least November of 2011), and having no money and no possessions to speak of, J.R. does not produce this supposed kite until January 7, 2013, whereupon he was paid $300 for it.

     Essentially, J.R. and his handlers ask us to believe that for some reason J.R. hangs onto this unlikely kite identifying him as a cooperator for 2 weeks while in custody, without telling anyone in the Los Angeles Sherriff's Department about it, then smuggles it out from under the noses of jail authorities (who clearly would not have knowingly allowed him to leave the facility with a kite, regardless of his status), and then decides not to tell his handler about it for another 3 weeks for no fathomable reason. This from a hired cooperator who was arrested for domestic violence, is implicated in multiple violent crimes and is under constant threat of deportation to El Salvador. This allegation has no indicia of reliability, fails to establish by any applicable standard any relevant fact for consideration, and should be stricken from the PSR. In the even it is not stricken, it should be given no weight in determining the sentence.

## II. SENTENCING RECOMMENDATION

Mr. Vega stands by the agreement of the parties and recommends a sentence of 135 months, concurrent with the sentence imposed in 13CR484, and with credit from the time of his arrest in November of 2011.[1] As outlined in the facts agreed to in the plea agreement, Mr. Vega committed serious criminal acts and this sentence appropriately reflects this conduct.

The Probation Officer has provided excellent background on Mr. Vega's childhood experiences, and undersigned counsel will add any details the Court should find relevant at the sentencing hearing. In addition to the information in the PSR, it should be noted that Mr. Vega's participation in this crime is primarily driven by his status as a presumed member of the Mexican Mafia. This presumption arose out of the initial part of this case, which occurred prior to Mr. Vega's arrest in November of 2011, where a long-time and widely-feared member of the Mexican Mafia, who was cooperating with law enforcement, "made" Mr. Vega a member of the Mexican Mafia as part of an ongoing narcotics scheme the cooperator was orchestrating for the benefit of his law enforcement handlers, who were surveilling and recording much of the activity. Mr. Vega willingly participated in the scheme, but while he did not refuse EME status he neither sought it out, and once it was upon him and he entered the LACJ, his participation in the enterprise in this case, including an insistence that others respect this status, was more of an expectation than an independent choice on Mr. Vega's part. This is not to say Mr. Vega has a legal defense to the allegations he has admitted to, nor that the origin of his status excuses his conduct, nor that he in any way refuses to accept responsibility or the consequences of his actions, but it is a factor in mitigation at sentencing.

---

[1] Mr. Vega will be submitting an ex parte application for an order for a revised Presentence Report to be prepared approximately 2 weeks after sentencing, so that it may reflect the agreed upon dismissal of the pending state case (BA390999) against Mr. Vega, pursuant to this agreement, that he may receive appropriate custody credits from the Bureau of Prisons.

Relevant to his prospects for rehabilitation and success upon release, Mr. Vega is no longer considered by anyone to be a member of the Mexican Mafia. Furthermore, the conditions of supervised release proposed by the Probation Office will ensure he does not get further entangled in his past gang affiliations and can move on to success as a law-abiding entrepreneur.

## CONCLUSION

For the foregoing reasons and analysis, Mr. Vega respectfully requests the court impose all aspects of the sentence agreed to by the parties in the filed plea agreement in this case: 135 months custody, concurrent with any sentence imposed in 13CR484-CAS, and with a recommendation that Mr. Vega receive custody credit from the time of his initial arrest on November 16, 2011.

DATED:  June 29, 2020                    Respectfully Submitted
                                         /s/
                                         _____
                                         MARK WINDSOR
                                         Attorney for Luis Vega